14707

RANDLE v. PITTSBURGH EQUITABLE METER CO. *ET AL.*

(197 S. E., 678)

*Messrs. Tompkins & Tompkins,* for appellant,

*Messrs. Mays & Featherstone,* for respondent,

June 16, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This action was brought in the Court of Common Pleas for Greenwood County to recover salary for one month and commissions on a year's sales made by respondent as a traveling salesman, selling the products of Pittsburgh Equitable Meter Company, appellant herein, it being alleged that appellant had employed respondent under a contract to pay him

$200.00 per month, expenses, and a commission of one-half of 1% on all sales made by him up to $50,000.00 and 1% on all sales over that amount. Appellant denied any liability on the ground that respondent was not working for it at all, but was employed by one, G. W. Bailey, who was selling goods for them on a commission basis under a contract which required him to pay all expenses, including the salary and commissions of the respondent or whoever else might work for him. In the original pleadings, G. W. Bailey's name appears as a co-defendant with appellant, but he was never served with summons and complaint, and the case was tried with appellant as the only defendant.

The complaint contained a second cause of action for fraudulent breach of contract, but the trial Judge, on this phase of the case, directed a verdict for appellant, from which there was no appeal, and we are therefore not concerned with this feature of the case.

Upon the trial of the case and at the close of respondent's testimony, appellant made a motion for a nonsuit, which motion was refused. At the close of appellant's testimony, appellant made a motion for a directed verdict, which motion was refused as to the first cause of action, which was for salary and commissions, and granted as to punitive damages alleged in a second cause of action for fraudulent breach of contract.

The case was submitted to a jury, which rendered a verdict in favor of respondent for the full amount claimed as salary and commissions following which a motion for a new trial was made and refused, and the case comes to this Court on exceptions alleging error in failing to grant appellant's motion for a nonsuit and for a directed verdict, and the failure to grant a new trial.

This is one of the many cases coming before this Court where we are concerned more with the facts than the law—the application of the well-settled law to the facts of the particular case, and it becomes necessary therefore to more than briefly set out the testimony.

Respondent had been the traveling representative of appellant for a number of years prior to June 1, 1935, working out of a district office of appellant located in Columbia, South Carolina, with a Mr. Swaffield as district manager.

In May, 1935, respondent received a letter from Mr. Swaffield requesting him to report to Columbia. When respondent reached Columbia he was instructed by Mr. Swaffield to get in touch with G. W. Bailey, who is the same Bailey named in this suit, and who was in Columbia at that time. While respondent knew Mr. Bailey, a conference was arranged between them by Mr. Swaffield. The conference took place approximately "around May 29th, that week-end." By reference to a calendar, it will be seen that May 29th, 1935, fell on Wednesday, and that the week-end went into the month of June. Appellant was arranging for Mr. Bailey to open an office in Atlanta, which was designated Atlanta District Office, but said office was to be conducted by Bailey on a different basis from the usual district offices of appellant, except one other. It was at this conference between respondent and Bailey that respondent learned that he was not to be further employed from the Columbia, South Carolina, district office under Mr. Swaffield. Bailey and respondent discussed the compensation respondent would receive working out of the Atlanta district office, but under our view of the case the details of the agreement that Bailey and respondent entered into are immaterial except that respondent required Bailey to guarantee to him that in addition to a monthly salary of $200.00 he would receive as commissions not less than he had received in 1934, the sum of $240.96, because he (respondent) did not know "how this Atlanta office would pan out," and he had not worked with Bailey before. Respondent knew the contents of the contract between Bailey and appellant—went over it with Bailey—read it when Bailey signed it, and read it when he sent it back, and kept Bailey's copy of the contract in a safe deposit box to which he (respondent) had access.

The contract and agreement between Bailey and appellant appointed Bailey the exclusive representative of appellant for the territory traveled by respondent while working out of the Columbia, S. C., district office, but was different from the usual district office contracts in that it was exclusively a commission contract, and provided that Bailey would employ at least one full time salesman at a salary of not less than $200.00 monthly, and the salary and expenses were to be paid by Bailey.

Article II of the contract between appellant and Bailey, under the sub-heading "Duties and Powers," is as follows:

"Bailey agrees to diligently devote his entire time and energies to building up and maintaining a market for the products of the Companies in said territory, and agrees to have reports prepared on all calls made on customers or prospective customers in said territory, as required by said Companies, and regularly to forward said reports to the Pittsburgh office of the Companies in accordance with the practice of the other sales representatives of the Companies.

"The Companies will furnish Bailey with pamphlets, catalogues, and advertising literature relative to the products of the Companies in acordance with Bailey's reasonable requirements without charge therefor, and will send sample devices on trial or test when requested by Bailey, who hereby assumes liability for payment or return of said samples within six months of date of shipment.

"Bailey will employ at least one full time salesman satisfactory to the Companies at a salary of not less than Two Hundred ($200.00) Dollars monthly, whose salary and expenses shall be paid by Bailey, and Bailey agrees that he will not employ any sub-representative without the consent of the Companies.

"Bailey agrees that he, or any sub-representative whom he appoints, will call upon the trade to solicit sales of the products of the Companies, and service such products when called upon by customers to do so.

"All correspondence, solicitation, or other business carried on by Bailey or his employees and within the scope of this agreement, with customers or prospective customers of the Companies will be carried on by him as sales representative of the respective Companies and not under his own name or any other name or in any other manner, and copies of all such correspondence will be sent to the Companies at their Pittsburgh office in accordance with the practice of district offices of said Companies.

"It is understood and agreed by the parties hereto that Bailey is employed primarily to promote the sales of the products of the Companies in said territory and that all orders received, proposals made, or things done by Bailey are subject to the consent and approval of the Companies, and Bailey is not authorized or employed to collect money for sales made or to accept any payments or promissory notes or to execute or make any agreement or promissory notes for the Companies, or to obligate the Companies in any way without their consent and approval, and that no authorities or powers to Bailey are to be implied from this agreement other than those expressly named herein."

Under the contract between respondent and Bailey (as an individual or as the agent of appellant) respondent was furnished the same automobile in which he had been traveling and the same territory which he had been traveling. When he procured a new license for the automobile, which he was using, he procured the license in Bailey's name, under instructions from Bailey, although formerly he had been procuring the license for the automobile in the name of appellant. Respondent's expense checks and salary checks were received from Bailey and were the personal checks of Bailey, and in October, 1935, Bailey paid respondent one-half of the bonus or commissions he had received in 1934.

On August 27, 1935, some time after the contract had been executed by Bailey and appellant, and was resting in the possession of respondent, that is, in a safety deposit box to which he had access and in which he was keeping it

for Mr. Bailey, and when he was thoroughly familiar with its contents, respondent wrote Mr. L. A. Dixon, the then vice-president of the appellant, the following letter:

"Orlando, Fla.,
"August 27, 1935.

"Mr. L. A. Dixon, Vice President,
"Pittsburgh Equitable Meter Co.,
"400 Lexington Ave.,
"Pittsburgh, Pa.
"Dear Sir:

"Since I left the employ of the Company and the Columbia Office May 31st, of this year, all matters pertaining to my connection with the Columbia Office have been attended to with the exception of the bonus due me for the first five months of 1935, namely, January to May inclusive.

"I would appreciate it if you would have this matter checked up and let me have the Company's check to cover the bonus due me at your earliest convenience.

"With kindest personal regards, I am,

"Yours very truly,
"M. B. Randle."

Although appellant, through its said vice-president, promptly wrote respondent denying there was any amount due him by appellant as commissions or otherwise, even in the bringing of this suit, no further claim was made against appellant for the "bonus" referred to in said letter from respondent to appellant. And in the letter of refusal and disclaimer of any amount due, Mr. Dixon, vice-president of appellant, had this further to say: "I do not know what arrangement Mr. Bailey has made with you but I feel sure he will pay you every cent that your (you) are worth and if you can help him increase the business there will be no question but what you can make more money, providing you keep your expenses in line, but I must tell you that insofar as we are concerned we cannot pay you any commission, bonus, gift, or call it 'what you may' for the

first five months of this year in view of your total cost to us."

It will be noted that in the letter of August 27, 1935, from respondent to Dixon, vice-president of appellant, he said: "Since I left the employ of the Company and the Columbia Office May 31st of this year, * * *"; and in the reply letter thereto, Mr. Dixon, the Vice-President of appellant, stated he did not know what arrangements "Mr. Bailey has made with you," referring to compensation respondent was receiving.

When Bailey wrote respondent on May 5, 1936, dispensing with his services and setting forth therein that respondent's salary and expenses were consuming about 65% of the commissions of the Atlanta district office, respondent replied, protesting and calling to Bailey's attention, though arrived at by different figures from those quoted in Bailey's letter, the amount of money Bailey would make out of the office, not making any claim that anyone other than Bailey was under a duty to pay him for his services, and in said letter had this to say: "In view of the above facts I am very much surprised at this request for me to take a vacation without pay. You will recall that in our conversation it was agreed that I had the same arrangement as I had the year prior and further it was agreed that I was to receive not less than $200.00 per month salary and all expenses, for the entire twelve months and a bonus of not less than $240-.48 regardless of the amount of business done, and if we had a good year I was to receive an additional bonus."

Respondent contends that the following facts made it necessary for the trial Judge to submit to the jury the issue whether he was employed by appellant through Bailey as its agent.

On or about June 1, 1935, appellant divided its territory and arranged for its Georgia and the major portion of its Florida business to be handled from an office established in Atlanta, with G. W. Bailey as its district manager; that respondent thereafter traveled the same territory with the

same equipment and sent carbon copies of all transactions to the home office of appellant in Pittsburgh; that on June 5, 1935, and before the contract between Bailey and appellant was actually executed (Bailey did not execute it until June 10, and appellant about July 31, although Bailey and respondent commenced to operate under the contract as of June 1), Dixon, the vice-president of appellant, wrote respondent a letter in part as follows:

"I understand from both Mr. Swaffield and Mr. Bailey that you have been advised of the fact that we have made a new set up for your territory with Mr. Bailey as district manager.

"In order to simplify matters, we have made an arrangement with Mr. Bailey for handling your salary and expenses so that for all intent and purpose you are working solely for Mr. Bailey and all of your instructions, except in cases of extreme emergency, will come from Mr. Bailey.

"I have been convinced for some time past that we must cut our territories into smaller units as closer supervision should develop considerable amount of business. We have always considered Wallace Bailey the best municipal or water works salesman in our employ and the job that he did in Chicago on several of the large gas accounts convinced me that he will be of considerable help in lining up Atlanta and other large gas companies. We, therefore, feel that you are fortunate in being able to work so closely with a District Manager and that regardless of whether you stay with our company in years to come or not that you will profit by your experience under Mr. Bailey's guidance."

That the contract provided that Bailey would not employ any sub-representative without the consent of appellant and that all correspondence, solicitation or other business carried on by Bailey or his employees and within the scope of the agreement with customers or prospective customers would be carried on by him as appellant's representative and not in his own name or any other name or in any other manner, and that copies of all such correspondence would be sent to

appellant at its Pittsburgh office in accordance with practice of district offices of appellant; that appellant had the right to have respondent discharged; that order blanks, stationery, etc., carry the name of appellant and all orders were to be sent direct to appellant.

In passing upon the motion for a directed verdict, the trial Judge said: "I am not going into details in passing on the motion for a directed verdict. I will say this, if the only evidence in this case was the contract between Bailey and the Meter Company, then the contention made by the defendant that Randle was the personal employee of Bailey would have considerable merit, to say the least. But, in passing on this motion the Court must take into consideration not only the contract but all the documentary evidence as well as the other testimony in the case. According to my recollection of the testimony, a reasonable inference can be drawn from the testimony that Randle's contract, which he claims to have made with Bailey, District Manager of the Meter Company, that that verbal contract was made prior to the time that Randle saw this written contract which has been inroduced in evidence. Taking all of this testimony together, I think the question as to whether this employment made Randle the employee of Bailey or of the Meter Company is a question that will have to be submitted to the jury. The motion for a directed verdict as to actual damages is refused."

This Court has a decided advantage over the learned trial Judge in passing upon whether a verdict should have been directed for that the testimony has been reduced to writing (printing) and is before us in full.

Respondent was very indefinite as to the exact time he had his conference with Mr. Bailey in Columbia with reference to his change or working out of the Atlanta office instead of the Columbia office, and as to when he saw the proposed contract, which thereafterwards became an executed contract between Bailey and appellant. He puts the time as around "May 29th, that week-end." As has hereinbefore been stated, May 29, 1935, was on Wednesday, the

middle of the week, and the entire "week end" was in June. The contract was signed by Bailey on June 10. Bailey received it while in Columbia, and he, his son, a friend, E. W. Crouch, and respondent, held a conference and discussed every item in the contract. It was about that time that Bailey and respondent entered into an agreement, although the contract was not then actually executed by Bailey, and respondent read it when Bailey signed it and read it when he sent it back and proceeded to work out of the Atlanta district office. So far as the record discloses, respondent was not in Columbia with Bailey but one time, about the first of June, and there is no contradiction of the testimony of Bailey that the contract was discussed at the conference in Columbia, "every item," and as aforesaid, respondent proceeded to work out of the Atlanta office as the employee of Bailey, either as agent for appellant or as an individual, from about June 1, 1935.

After a careful study of the record in this case, we do not believe that a reasonable inference could be drawn from the testimony that the contract between respondent and Bailey was entered into prior to respondent seeing and going over the contract between Bailey and appellant. The testimony shows of course that the contract of respondent with Bailey was entered into prior to the execution of the contract between Bailey and appellant, but no other reasonable inference can be drawn from the testimony but that the contract between respondent and Bailey was entered into in contemplation of Bailey and appellant executing the contract as prepared.

It may be that the letter from Dixon, vice-president of appellant, to respondent, dated June 5, and hereinbefore set forth, was sufficient to create in the mind of respondent that he was continuing in the employ of appellant, and that any contract he made with Bailey was as agent for appellant, and standing alone, would have been sufficient to require the submission of the case to the jury to decide if, under all of the circumstances, the inference could be drawn that respondent was in the employ of appel-

lant, but we have in addition to the fact that respondent had gone over carefully the proposed contract, which afterwards became an actual contract between Bailey and appellant, his own construction of his status as expressed in his letter to the vice-president of appellant, of date August 27, 1935, wherein he says: "Since I left the employ of the Company, * * *."

Even though respondent may have been led into the belief that he was employed by the appellant, or that he was continuing in the employ of appellant by reason of the letter of Dixon, vice-president of appellant, dated June 5, 1935, he undoubtedly knew he was not employed by appellant when he wrote the letter of August 27, 1935; and again by the reply letter he received thereto, and yet he kept silent, making no protest and accepted to all appearances the status of an ex-employee of the company and an employee of Bailey.

Nothing that respondent said, wrote or did from about the first of June, 1935, until Bailey found it necessary to take a claim and delivery proceeding for equipment furnished him, gave the slightest indication that respondent considered himself as an employee of appellant. Granting that he thought he was an employee of appellant in June, July and until August 27, 1935, he knew then that he was not, and having failed to make any question about it, and having proceeded with his work, his course of dealing estops him from now asserting a claim against appellant on account of employment from beginning about June 1, 1935.

It is the opinion of this Court that the trial Judge erred in not directing a verdict for the appellant, and the case is therefore remanded to the Circuit Court with direction to enter a verdict in favor of appellant.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. JUSTICE CARTER did not participate on account of illness.